Good morning. Again, please be seated. Mr. Gash? Yes, ma'am. Good morning, and may it please the Court. My name is Alex Gash, and I represent the defendant appellant Saundra Lucille White. The District Court's judgment and sentence should be vacated for two reasons. First, the District Court committed error by rejecting Defense Counsel's request for a Franks hearing, notwithstanding testimony from the government's star witness calling into question the only facts in the warrant affidavit providing connection between the alleged criminal scheme and Ms. White's residence. Second... It wasn't the only evidence, though, was it? Yes, it was. There was evidence that I think the District Court recognized, first of all, that there was, at best, there was, there might have been an inconsistency, at best. And the fact that, the recognition of the fact that work is so portable, that work could easily move between a work office and a home office. Right, Your Honor. So there were two factual statements only, and the District Court stated that, and the government agrees on appeal. There were only two factual statements that provided that alleged nexus, besides the common sense inference that the judge took as to modern technology or the agent's statement of training and experience. So looking to those two factual statements, the first statement, and really the most important of them, was whether Ms. Heiler told the affiant that Ms. Heiler and Ms. White discussed this case at Ms. White's residence, and the government admits on appeal that, quote, taken as a whole, Ms. Heiler's trial testimony called into question that fact. And the government further admits, quoting the District Court, that the, quote, rather emphatic denial, now in the words of the government, of that discussion, may satisfy the first prong of the Franks test. Where is the evidence of reckless or intentional misrepresentation? Yes, Your Honor. I feel it comes in a few different areas. First, these are affirmative statements that the affiant is claiming that Ms. Heiler told him, and it is beyond mere negligence to affirmatively misrepresent what someone told you. Further Well, she didn't. Actually, she moved away on redirect and said that she had been to White's home on several occasions and had seen the home office and might have had a brief conversation at the house. So what the District Court found was, at best, inconsistent versions with varying degrees of uncertainty about communications that took place three years ago alone. Yes, Your Honor. And to quote the District Court, it was a rather emphatic denial by Ms. Heiler as to whether she discussed business with Agent Davids. There was the only doubt and the only question was whether there may have been some passing conversations regarding Ms. Milner. And any of those conversations would have only been about Ms. Milner's health status rather than the scheme more broadly. And that redirect simply doesn't rehabilitate the rather emphatic denial that the government admits may satisfy the first prong of the Franks test. The second statement relates to whether or not Ms. White has a home office from which she conducts business. Now, Ms. Heiler testified at the trial that she had never been inside that room and she did not recognize photos of the room which were presented to her during the trial. And the bare fact of a home office or a room referred to as an office, we don't know how it was actually used and Ms. Heiler displayed no knowledge of that fact, is not sufficient to provide a nexus to evidence of this particular crime. And so for those reasons, we state that the substantial preliminary showing has been met in this case. Especially with respect to the recklessness point that Your Honor addressed earlier, I have to point this Court's attention to United States v. Lull. There was an omissions case which is subject to a higher standard than the affirmative misrepresentations here, but this Court stated that where the statements were central to probable cause and the officer would know that the statements were central to probable cause, that could give rise to an inference that the statements were not merely negligent, but they could rise to the level of recklessness. And now without these statements under the second prong of the Franks analysis, there was no probable cause remaining for the search. As Your Honor has stated, the only remaining recitation that the District Court could rely upon was the proposed training and experience of the officer, that it is common for individuals in these types of crimes to keep evidences at their home based on the purported blurred line based on modern technology between the I think I would be inclined to add to that common sense, frankly. But you don't have to address that. Go ahead. I'm anxious to hear how you discount training and experience in this context. Yes, Your Honor. First, the training and experience invoked by the officer and the training and experience that the District Court relied upon was all in the realm of drug cases, and there hasn't been a similar invocation of training and experience to establish that type of connection in fraud cases, which Well, drug cases often bring along money laundering and that kind of thing. That's correct, Your Honor. But as this Court said in Lull and in Williams, the connection in those cases is between the contraband that the drug dealer is presumed to keep on or around their person or their residence. There hasn't been a similar finding by any court in this circuit regarding fraud cases, which vary in means and execution. I'm looking at the paragraphs in the affidavit that this case, discuss this case with White at her home and knows her to maintain a home office at that location. I'm still having trouble seeing the reckless misrepresentation. Yes, Your Honor. As I said, the first statement regarding whether or not they discussed this case at her home, I believe, is the more important position. It's a very thin reed that the government had to establish probable cause here, and we do believe that the level of In the search of the home office? Correct, Your Honor. The District Court found abundant probable cause in part because, well, several reasons, but also found that probable cause still existed without, under the good faith exception, and in addition, the common sense notion that, particularly in a paper records case, the mobility of records, the portability of records. Yes, Your Honor. Of course, in a Frank's context, good faith is not a defense, as this court has held in the Folsley case. I'm just referring to probable cause. Yes, Your Honor. Even under the probable cause determination in the Frank's analysis, good cause is, I mean, good faith, sorry, is not a defense, and beyond that, the mere fact of having a home office would be a dramatic expansion of the nexus requirement and would be contrary to what this court and others held about the mere advancement of technology cannot eviscerate the Fourth Amendment's fundamental guarantees. A ruling for the government in this case would mean that any professional that's accused of criminal wrongdoing could have their residence searched without any more evidence supplying that nexus, just based on this intuition as to what individuals may do in the modern technological age, and that's been rejected time and again by the Supreme Court and others. Beyond this, the… What's your best case for the Supreme Court rejecting that? I believe the Kyllo case, Your Honor, explained that, especially with respect to… Kyllo? Yes, it said that one of the main features in that case was whether the advance of technology would circumscribe the Fourth Amendment's guarantees, and it said that with respect to the home, which is at the apex of the Fourth Amendment's protections, that the mere advance of technology would not do that. But Kyllo is a case about whether something was a search, not the substantive underlying facts and circumstances justifying the search. That's right, Your Honor, but it stands for the general principle that the mere advancement of technology does not eviscerate the Fourth Amendment, and the nexus requirement that this Court and others have required has generally required a factual basis. If Kyllo is your best case, what's your second best case? Perhaps Riley v. California. It's not in the briefs, but again, it applied this technology principle more broadly to state that the mere fact that people are holding troves of data on electronic devices doesn't mean that we can expand searches in heretofore unrecognized ways. So Riley is the cell phone case. That's right, Your Honor. What's your third best case? I'm not sure of the third best case at this point, Your Honor. But in this case, that would be just a pure speculation based on the blurred line between home and office, as the judge said, and the Kyllo case said … Not just. You haven't convinced me that the nature of the item and the normal range of inferences of where one would likely keep such evidence isn't a basis, nor am I entirely convinced that we can't rely on the officer's training and experience just because it isn't a drug case. With respect to the inferences here, Your Honor, I would point to the other evidence in the warrant affidavit, and with analogy to the Loy case out of the Third Circuit. Here all of the evidence was pointing in the direction of Ms. White's legal office. None of the evidence was pointing in the direction of her … You know, you don't have a lot of time, and your yellow light is on. Yes, Your Honor. I don't want to direct an argument, but … I'm happy to field Your Honor's questions, but I would like to transition to the sentencing arguments, if I may, at this point. First to the procedural errors in this case, and there were two, the first being the misrepresentation that the defendant was acting on behalf of a government agency. And the government has pointed to no case, and the district court cited none, where this principle has been applied to an anonymous document-based fraud, such as here. The text of the guideline commentary further requires a misrepresentation by the defendant  The phone call? Yes, Your Honor. That would be the only arguable source of connection of a misrepresentation by the defendant as to the defendant's … Well, wouldn't it have had to be at the defendant's behest if it were not the defendant? Your Honor, that's … How else could it have come to play? We could speculate about any number of reasons of what might have happened. Who did it benefit? Pardon me? Who did it benefit? In this case, well, I don't think it benefited anyone, because I believe the voicemail ended up triggering the investigation in this case. It would have, if taken as intended, been newer to the benefit of the defendant in the scheme, would it not? That was the purpose of it. That was actually the only purpose of it. That seems like a common-sense intuition. Yeah. However, if this was a speculation based on an accomplice, that was not a misrepresentation by the defendant as to the defendant's own authority. So even under that interpretation, it wouldn't satisfy that enhancement. Moving to the second enhancement, the sophisticated means, the guideline commentary there says that the scheme must be especially complex, and we need to take something outside of the ordinary and generic fraud. And here, this is essentially a basic money laundering case, which is not anything beyond the ordinary and generic. The government at trial explained that this was a commonplace fraud using commonplace tools. And indeed, beyond the commonplace tools, there were numerous errors littering the notices and other documents in the scheme. And in the Adepoju case, we point this court to the notification there that even an employee identification number for a fictitious company was not by itself rising to the level of sophistication. And this court rejected the sophisticated means enhancement in that case where— Doesn't the guidelines commentary specifically note that hiding transactions through the use of fictitious entities ordinarily indicates sophisticated means? Yes, Your Honor, in the ordinary case. But of course, that was also the case in Adepoju, which rejected the enhancement and specifically noted that obtaining even an employee identification number for a fictitious organization would not rise to the level of sophistication. And in this case, this is just the fictitious entity, if it did anything, was to accomplish merely the bare facts of what was required for the money laundering count. So I don't believe we're outside— Are you fabricating tax notices? Yes, Your Honor, I believe it's a common scheme. This is not the type of more complicated fraud that the IRS is concerned about, including robocalls and other more sophisticated technology. This is a cut-and-paste job of notices involving— What about the duration? I don't mean to cut you off, but isn't the three-year duration of the scheme relevant in terms of its sophistication that she was able to maintain this for that length of time? I don't believe it is, Your Honor. Simply repeating a simplistic fraud, right with errors, over a period of years, I don't think changes the fundamental nature of the fraud, which is commonplace. Finally, if I could make a comment about— Do you think the Court made it sufficiently clear that the sentence would be the same even if we sent it back? I don't believe it did, Your Honor. I looked at the Abbas case, and this seems to be a conclusory comment tossed in for good measure, which is inappropriate under the Gall case, which requires a substantial justification for an above-guideline sentence and a more substantial justification for a significantly above-guideline sentence. In the death issue, all we said was that the District Court erred in shifting the burden to the defendant of disproving sophistication. It's not directly—it doesn't contribute much to the facts here. I would— It wasn't that we said that those didn't show sophisticated means. We simply said that the District Court erred in having—in effectively shifting the burden of proof to the defendant, didn't we? Yes, Your Honor. That was one of the errors, and perhaps the prime error, but I believe the Court went on to state that the other evidence of sophistication was not sufficient. So while there was that categorical error in the analysis, that was— Do you think this is less sophisticated than robocalls? I do, Your Honor. It's cutting and pasting labels from one document to another, and then— She had to obtain an employer identification number, didn't she? Set up a fictitious entity. Don't we look at the means as a totality or a basket? We don't separate each thing she did and say, that's not sophisticated, that's not sophisticated. We look at it as a collective whole. Absolutely, Your Honor. And that's why we would focus on the numerous errors that the government pointed out through trial in the notices, as well as the commonplace scheme, which is what the government characterized as, in addition to the District Court's reliance on the personal relationship, which involves nothing to do with sophistication. That doesn't really address Judge Keenan's question, though, I think. If you can't look at each isolated thing, a form, a fictitious entity, this and that, you look at how they operate together to form a complicated scheme. Absolutely, Your Honor. And we contend that that's not meant here when you view them all in conjunction. If there's enough of the questions, I'd like to reserve the balance of my time. Thank you. Mr. Pearce? May it please the Court, James Pearce of the United States. The District Court's recent decision not to hold a Franks hearing was correct, and the 11-year sentence it imposed on the defendant is procedurally and substantively reasonable. Now, turning right first to the Franks issue, the defendant, in fact, didn't preserve that claim, in our view, by failing to file a claim against the defendant. The defendant failed to file it, along with the motion to suppress, where the defendant also challenged the probable cause to search the residence. And the problems that creates are precisely the problems this Court identified in Moore. It caught the government unprepared. It put a hold on trial. And then a third problem, which wasn't identified in Moore, but has been in other cases, which is that it possibly put into play a double jeopardy problem. The jury has been in dispute. How could this have been raised, the Franks issue, been raised before trial? You didn't have the equivocation of the witness on the stand. You only had Ms. White's statement that she had never discussed the scheme at home. What else did you have? Well, you, in fact, didn't have that statement. But our point is simply that the defendant, Ms. White, could have filed affidavits saying, I don't work at home, could have had clients make similar affidavits, could have cross-examined the case agent who testified at the earlier suppression hearing. All of these things are things that could and should have been done earlier. Now, I don't want to dwell on the point, because I think our arguments are quite strong even if this Court weren't to apply plain error review as would be appropriate under the Chandia case. As already discussed here, the Franks showing is a substantial preliminary showing and requires these two prongs. And there are essentially two parts to the first prong. Was there a false statement? And was it either knowing and intentional or made with reckless disregard for the truth? Now, at most, the defendant here can show that there is possibly a false statement. But the district court, in fact, explicitly as a factual matter, found there was not a false statement. There was inconsistency. Certainly, and to sort of clarify what we are saying in our brief, the emphatic denial or the sort of skillfully elicited emphatic denial that Ms. Heiler makes at cross-examination does suggest a false statement. But the redirect testimony, as Judge Duncan points out, walks that back and says, I may have had some conversations. And the fact that those conversations were about health care, that still puts that right in the heartland of this case. The defendant was hired initially to represent Ms. Heiler with respect to Milner's health care issues. That's what this case is all about. Certainly, the tax fabrications are what kicked off the criminal aspect of the case, but having conversations about health care, as Heiler testified, were about this case. In any event, that only gets you to a false statement. I think as both Judge Keenan and Judge Duncan pointed out, there is frankly no, pun not intended, no evidence of recklessness or deliberate conduct on behalf of the agent. And if anything, the evidence seems to point the other way. Heiler made clear that she had numerous conversations with the agent in question here, Agent Davids. That would suggest that there's a free flow of information. She may well have mentioned this at one time and just simply not recalled that fact. In the Franks case itself, what the Supreme Court was concerned about is agents essentially making this stuff up, possibly never even meeting with witnesses. And so you have that strong indication, a substantial showing of deliberate misstatement. You don't have that here. What about Agent Davids' training and experience? The district court felt that there was abundant evidence. Do you agree that there's abundant other evidence? And if so, specifically what, in your view, is it? And to be clear, the court only gets there if it gets past the first point. So the district court recognized that the evidence was stronger with respect to the office, not the home office in the residence, but the defendant's office than it was in the house. But it did find, as Your Honor quoted, abundant probable cause. I think the probable cause was less abundant for the residence, but nonetheless satisfied that necessary standard. Less abundant is a complete euphemism, isn't it really? I mean, it was read thin. Well, I disagree with read thin. Wait a second. You have the officer's stated experience, you know, what fraud claims involved and, you know, lots that's done out of home offices, and you have the inconsistent statement given to Agent Davids. I mean, an inconsistent statement, excuse me, on the stand, and the Agent Davids' inclusion of at least his perspective of the witness's statement in the affidavit. That's not very strong. I mean, it's pretty weak. That omits two pieces of information. One is the fact that there was a home office, and that was never disputed by Ms. Heiler at all. Admittedly, she hadn't been in there, but she had been to the defendant's residence. Right. So every time somebody has a home office, then that immediately puts it within the ambit of a search warrant? No, absolutely not. And that actually gets to the second piece of information that was critical to the probable cause finding, which is the extensive discussion of the nature of the scheme. There was in the affidavit, and confirmed by trial evidence, the defendant was setting herself out as a lawyer, was fabricating these documents, was communicating regularly, and so this was a, as Judge Duncan put it, a document-heavy scheme where you had these types of communications, and so the every time that there is a home office, that sets up the possibility of probable cause. It is in a scheme such as this, with a lawyer, whether disbarred or not, holding herself out as a lawyer, practicing the way modern law is practiced, and the district court didn't clearly err by making the common sense inquiry about the technological environment, that that is enough. Fully conceding that it was less probable cause as to her office, that's not a thin read. And in fact, as to her work office, as opposed to the residence, and the district court, at the motion to suppress where the defendant never brought up the Franks issue, independently found sufficient probable cause. But you agree there's no evidence of after-hours activity involved in this scheme? I would disagree. Could be? Couldn't be? We don't know. Well, in fact, the district court What's the evidence of after-hours activity? The district court at page 1524 of the J.A., when making its ruling, says, how could you possibly want me to draw the inference that there's no Right, but I'm asking you for evidence. Well, I can't give the citation off the top of my head, but I can tell you there were text messages that were sent about taxes and obligations that were sent at hours of the day. In other words, the district court wasn't making up out of thin air. You text on your cell phone. You could be sitting in your living room doing that. You could be sitting in your bathroom, for goodness sakes. I mean, what suggests that that was done in a home office? It doesn't matter whether it was done in a home office. It matters whether it was done at home. The search wasn't just for the home address. The search was of the residence. And so the fact that this was done at her residence was what mattered. Those times of the day are likely when someone is likely to be at home. What are we doing with the knowledge, training, and experience of Agent Davis? I'm sorry? What is your basis for asserting that that's a legitimate feature of the probable cause determination? Certainly, a number of this court's cases, Williams is the one that cited, say, that a district court ought to take into consideration the training and experience of an agent. Now, Williams is a drug case, but the broader proposition is when an agent says, I know this based on my training and experience, that's worthy to some deference. And, importantly here, Agent Davis' training and experience is not, he doesn't say, I've done a bunch of drug investigations. He talks about his experience doing tax and fraud investigations. Is it enough to carry the day if the other evidence is inconsistent regarding the home office and whether she ever discussed anything? Short answer is... The evidence isn't inconsistent as to home office. It's consistent, I think. Correct. But the evidence was certainly inconsistent as to whether there were discussions regarding the home office. Essentially, you're saying it can carry the day. That's right. That's our view with a specific reference to this case where you had, in addition in the affidavit, as already mentioned, an extensive discussion of the nature of the fraud. Not just any time there's some invocation of training and experience, but when you have that, you have what that officer's experience is and when you have the type of fraud that is alleged, and then subsequently proven, here. That's where it's sufficient. We're not making a more blanket claim, as I think the defendant is suggesting here, that any time the government says or an affidavit says training and experience, that just opens the door of arrest. Does your argument that the guidelines sentence was substantively reasonable depend on our finding that the enhancements were proper? No. So you followed the double negative sentence? I think I followed your question. We certainly believe the enhancements were proper, but for purposes of your question, we do think the sentence was substantively reasonable even if this court were to conclude the district court got the enhancements incorrectly. There was not only, as Judge Javits asked, a statement that the court made, I would have applied the sentence even if I had made errors. That was followed by a reference to the specific 3553A factors, and importantly, that reference itself referred back to a very extensive 3553A analysis that the district court had already done. It talked about the nature of the offense, the severity, I think you used the words, a betrayal of enormous magnitude, and very importantly, the need for deterrence and protection from the public. One of the pieces of evidence that came out during the sentencing hearing was that the defendant essentially, after having been arrested and indicted on this offense, tried to do it again to Lieutenant Waddy, using essentially the same type of scheme. So these are the kinds of factors that the court properly justified to say this is the sentence I would impose. Now, to get back to the enhancements, we of course think those were properly applied by the court. We make two arguments on the question of misrepresentation by the defendant. I think our stronger argument is the second argument, the phone call. I think it is within the ambit of the language of the guidelines, the argument that the factor for fabricating tax documents was in fact a misrepresentation that the defendant was acting on behalf of a government agency. Only the government collects taxes. Certainly the defendant didn't identify herself on those fabrications. So I think that that would be a justifiable basis to uphold the enhancement. But really, there can't be much of a question on the second of our two arguments, which is the phone call. As Judge Duncan indicated, the only person that that would have benefited, and it's not clear from the record whether in fact there was benefit, whether the arrest came before any benefit flowed from it, was the defendant. And section 1B1.3 I think it's A1A of the guidelines makes clear that enhancements are applicable not only for the defendant him or herself, but with respect to any act that the defendant causes aids or abets. And in fact, the district court recognized that the defendant likely, if she hadn't made the phone call herself, perhaps altering her voice, that she had caused someone else to do it. Now that's not a clearly erroneous finding. I think that's a very common sense finding. With respect to sophisticated means, I think the court identified exactly some of the reasons why that was appropriately applied here. You had the creation of a fictitious entity, IRFS, deceptively chosen so that it looked very close to IRS. You had that created in the name of the stroke victim, so as to add an additional layer of concealment. You then had the defendant open a bank account at Wells Fargo or then Wachovia, again in the stroke victim's name, fabricate the tax documents, send them to Hiler, convince Hiler she needs to pay them. When the payments then go into the IRFS account, the defendant then creates an additional bank account, this one in her own name, from which she sends the checks that Hiler had sent to IRFS, and from that IRFS account, the defendant sends checks all over the place to herself, to her new bank account, to her daughter, and for other things. Judge Keenan, I don't think there's specific case law as to whether the scope of the length of the scheme is directly relevant. It's certainly the case that the court should consider, and the district court did, that all parts of the scheme working together, but the fact that this lasted for three years and she was able to deceive someone who had a PhD and was an intelligent individual, I think does speak to the fact of its sophistication, alongside of touching all the boxes of there being fictitional entities and bank accounts, etc. If I can, I just want to circle back and emphasize one point, because we bumped onto the sentencing issue. I just really want to emphasize the fact that there is essentially no evidence that there was, and this is back to the Franks issue and to the first prong, that this was reckless or intentional or deliberate. There is simply nothing here. In some cases like in Tate, the defendant has identified conflicting affidavits. The Lull case that the defendant cites here provides some other examples. That doesn't really hurt me. You're bringing up Tate, you're bringing up Lull. Cases I get reversed in dissent. Well, but your dissent, Judge Davis, your dissent in Lull was only as to probable cause, right? It wasn't as to the intentional part, which is what I'm distinguishing here. So, no disrespect. No, I'm kidding. I'm kidding, of course. That's an important point, just back to that Franks issue. Your point, if I understand it, even if there hadn't this is an omission, is this an omission case or a commission case? I take this to be a commission case. So, if you take it all out, you still have probable cause. That's correct. Even if you took out training and experience, you'd have probable cause. I'm not sure I'd go that far. I think we could make that argument, and I think the district court says, can I take judicial notice of the fact that it's just common sense in this environment, in this type of fraud, I think we possibly could go that far. We don't need to go that far. And I can see why that might give a court some reservations, but I think it's a conceivable the Asian statement and the common sense nature of the inferences I think make this clear. It's difficult for me to imagine, the United States magistrate judge refusing to issue a warrant for the home on these facts of the perpetrator, the alleged perpetrator. I agree, although you were in dissent in lull, so I want to make sure I convince your colleagues as well, but I absolutely agree on that point. Unless there are other questions on any aspects of it, I'm happy to yield the balance of my time to the court. Thank you very much. Thank you. Thank you, Your Honors. I'd like to first focus on an aspect we didn't get to focus on earlier, which is the substantive errors in the sentencing. Here, the district court admitted that they gave absolutely no weight to the updated report of an acknowledged expert using a methodology that the district court had previously approved following a lengthy Dauber hearing. And why do you say no weight? That was the district court's own words and cited approvingly by the government in their brief. And so it's been said that sometimes you take things literally and sometimes you take things seriously, but you really think the district court gave it zero weight? I do, with respect to the updated diagnosis, and the district court's reasoning for that was rejecting the precise methodology that it accepted previously, specifically relying on interviews from those closest to Ms. White and had the closest connections with her. And the district court held previously in the Dauber hearing that that was exactly the type of thing that an expert should do when trying to come to a diagnosis. But the district court completely reversed their reasoning at the sentencing hearing holding that that same methodology was somehow inappropriate, and further the district court relied on two clear errors in attempting to discount that new diagnosis. The first, the government admits the district court discounted these interviews claiming that the observations were not contemporaneous with the alleged offenses. However, that's just clearly wrong as the government admits with respect to the former boyfriend's testimony who observed her during 2012 and 2013. The second error involves an attempt to undermine the motives of the family members, and the district court claims this is only coming after the trial when they know that conviction is coming in an attempt to lessen the sentence. Do you really think the judge didn't think that Ms. White had some serious psychological issues? She certainly has issues beyond the dissociative identity disorder in this case. So it's hard for me to understand or appreciate how the judge was aware of it. The judge certainly read the reports, but gave them absolutely no weight. The judge ordered an examination he did more than just read the reports. I'm sorry, go ahead Judge. He said he didn't give them any credence after he read them. It's not that he, I'm completely ignoring him. He considered the substance. He faced with competing medical opinions. He evaluated both of them as he should have and determined that Dr. Hendrick's diagnosis was not entitled to any weight because the method used was unreliable and sufficient facts and data to support the opinion did not exist. Exactly, Your Honor. He considered them. He just didn't credit them. Which is very different from disregarding them. He didn't find them worthy of any evidentiary value, which is a conclusion he is perfectly entitled to make and fact finders do all the time after weighing conflicting testimony. They find one worthy of credence and one not. That's right, Your Honor. I don't understand how you can use that. You can allude to that as any kind of error. Because the district court here said that the methodology and the principles were not reliable. He said that insufficient facts and data to support the opinion do not exist. That's right, Your Honor. As a finder of fact, he can do that. And you're certainly free to disagree with it, as you obviously do. But it butts up against a pretty draconian standard of review. That's right, Your Honor. We make no qualms about that. So perhaps turning from that argument back to the Franks hearing, it's remarkable that the district court, I mean, the government here agrees that Ms. Heiler's testimony suggested a false statement. And that's all that's required on the first prong of the Franks analysis, which is a substantial preliminary showing. Let's give you that. Fine. Then what we're left with... You still have to make the second prong and it has to be material. Absolutely, Your Honor. And there we turn to the training experience. And what has the government said? They said we can just look at the Warren case, but there's some reason to credit it here. But if you look to the other aspects of the Warren affidavit, here we have that same agent invoking their purported training experience that evidence of drug smuggling would be found at the home. And that evidence of bank fraud would be found at the home. Neither of which were charges in this case. Neither of which were ever proposed to be charges in this case. This is a cut-and-paste job from one warrant to another. And so it lends us to doubt the invocation of training experience with respect to these crimes. I see my time has expired. Thank you very much. We will ask the Courtroom Deputy to adjourn court for the day and come down and greet counsel. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allyson K. Duncan, Barbara Milano Keenan, Andre M. Davis